UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>NICHOLAS PRESBY,<br><br>        Defendant. | )<br>)<br>)<br>)   2:25-cr-00178-SDN-1<br>)<br>)<br>)<br>) |

## ORDER GRANTING MOTION TO SUPPRESS PHYSICAL EVIDENCE

This matter is before the Court on Defendant Nicholas Presby's motion to suppress evidence and motion to dismiss the indictment. These motions arise from a traffic stop and law enforcement's subsequent warrantless search of the vehicle and a backpack located therein. Following an evidentiary hearing and after careful consideration of the parties' submissions, the Court **GRANTS** Mr. Presby's motion to suppress physical evidence and declines as **MOOT** his motion to suppress statements, ECF No. 39, and motion to dismiss the indictment, ECF No. 35.

### I.    Background[1]

### A. Vehicle Stop and Search

Just after midnight on September 22, 2025, Lincoln County Sheriff's Deputy Samuel Alexander ("Deputy") sat in a marked cruiser at a stop sign on Austin Road at the intersection with Pond Road in Newcastle, Maine. There, he observed a van, driven by Keith Childs with Mr. Presby as a passenger, slow nearly to a stop as it approached him on the road. As the van had the right of way, the Deputy viewed this driving behavior as

---

[1] These facts are drawn from the parties' submissions and testimony heard at the July 8, 2026, hearing on Mr. Presby's motions.

"strange" and believed it was a "jerk" reaction to seeing his police cruiser. The Deputy also acknowledged the intersection is confusing, involving two one-way roads that merge at a sharp curve just past the Deputy's cruiser.

As the van passed, the Deputy checked its license plates against a law enforcement database and learned the registered owner had an outstanding arrest warrant. The Deputy began following the van, during which time he observed an inoperative license plate light and a loud exhaust—both citable motor vehicle violations—but saw no swerving, erratic driving, or other furtive movement. Soon thereafter, now on Main Street in Newcastle entering Damariscotta, the Deputy initiated a traffic stop.

As the Deputy approached the van's driver's side, he asked the operator, whom he found polite and cooperative, for the operator's license. As the operator reached for his documents, he asked the Deputy: "Reason for stopping?" The Deputy found this question "abnormal" because no one had ever asked him the reason for being pulled over so quickly after being stopped. At the hearing, the Deputy acknowledged the question did not itself suggest wrongdoing.[2] The operator, soon confirmed to be the van's registered owner, Mr. Childs, claimed the men were headed to paint the steps of a Damariscotta business, an errand the Deputy found odd given the late hour. The Deputy also observed a prescription pill bottle in the cup holder containing clear liquid, no visible pills, and a label scrawled over in Sharpie; Mr. Childs told him it held paint activator. The Deputy admitted he had no familiarity with paint or activator but assumed such a product would normally come in a can rather than a pill bottle.

---

[2] At the suppression hearing, the Court repeatedly asked the Deputy whether the encounter struck him as "suspicious," and he repeatedly answered "just abnormal." Nonetheless, as discussed herein, the operator's question about the reason for the stop is repeatedly listed among the Government's bases for probable cause to search the van.

Once the Deputy confirmed the warrant, he arrested Mr. Childs and searched him incident to arrest, recovering a cut pen containing pink, powdery residue inside.[3] Drawing on his training and experience, he believed this residue came from someone snorting drugs through the pen. He also found a small metal container on Mr. Childs holding three and a half pink pills and one and a quarter white pills. Mr. Childs identified the pills as Adderall and Subutex. At this point, the Deputy radioed for backup. The Deputy acknowledged he never asked Mr. Childs for proof of a prescription at the scene, never seized the Sharpie-marked orange pill bottle as evidence, and observed no drug odor, scales, large sums of cash, or other indicia of drug trafficking—on Mr. Childs or in the van.

The Deputy returned to the van, intending to let Mr. Presby drive it away if he held a valid license. Running that license, however, turned up a 2022 charge against Mr. Presby for unlawful furnishing of scheduled drugs. At that point, the Deputy instructed Mr. Presby to exit the van. Mr. Presby complied, and the Deputy began to search the van. A couple minutes in, the Deputy broke off, retrieved his drug-sniffing K-9 from the cruiser, and ran the K-9 around the van's exterior. The K-9 was not trained to detect prescription pills, and it did not alert on the van. The Deputy resumed searching the van, turning his attention to a backpack on the front passenger floorboard. He opened the backpack and found what he believed to be an air pistol, rubber gloves, a propane tank taped to a bottle, and a PVC pipe with a wick. He called his sergeant, who had earlier arrived at the scene; the two backed away and summoned the Maine State Police Bomb Squad, which later recovered two suspected improvised explosive devices from the

---

[3] Although there remains some dispute as to whether law enforcement discovered the powdery substance at the scene or later, the Court need not resolve the dispute as, even if the officer discovered the powder at the scene, it does not alter the Court's analysis. As such, for the purposes of this decision, the Court will presume the Deputy discovered the powder at the scene.

backpack. Law enforcement towed and impounded the van; a subsequent search pursuant to a valid warrant yielded no additional evidence. Law enforcement never seized the orange pill bottle containing the liquid found in the van's cupholder.

## B. Procedural History

Following further investigation, a federal grand jury indicted Mr. Presby, on November 19, 2025, on a single count of possessing an explosive as a felon in violation of 18 U.S.C. § 842(i). Mr. Presby moved to dismiss the indictment and to suppress evidence. ECF Nos. 35 & 39. The Court held a combined hearing on both motions on July 8, 2026, during which the parties stipulated that a ruling suppressing the physical evidence would moot the remaining motions. ECF No. 62.

## II.   Motion to Suppress Physical Evidence

Mr. Presby moves to suppress all physical evidence obtained from the warrantless search of the van and backpack, arguing the search violated his rights under the Fourth and Fourteenth Amendments. ECF No. 39 at 10. He contends the Deputy lacked probable cause to search the van or any container within it and the exclusionary rule therefore requires suppression of everything impermissibly seized.

## A. Automobile Exception

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches are "presumptively unreasonable," *United States v. McGregor*, 650 F.3d 813, 820 (1st Cir. 2011), save for a few "jealously and carefully drawn" exceptions, *Jones v. United States*, 357 U.S. 493, 499 (1958). Where no exception rescues a warrantless search, the Fourth Amendment requires suppressing evidence plucked from the poisonous tree of unconstitutional conduct. *See United States v. Levin*, 874 F.3d 316, 322 (1st Cir. 2017). Because officers here searched the van without

a warrant, the Government bears the burden of proving the search's legitimacy. *United States v. Delgado-Pérez*, 867 F.3d 244, 250 (1st Cir. 2017).

The "automobile exception" is one such carve-out to the warrant requirement: it permits law enforcement to search a vehicle without a warrant only if they had probable cause to believe it harbors contraband or evidence of a crime. *See United States v. Silva*, 742 F.3d 1, 7 (1st Cir. 2014); *Florida v. White*, 526 U.S. 559, 563–64 (1999) ("[W]hen . . . officers have probable cause to believe that an automobile contains contraband, the Fourth Amendment does not require them to obtain a warrant prior to searching the car for and seizing the contraband."). Probable cause exists when the totality of the facts and circumstances forges a fair probability that officers will find evidence of a crime in a particular place. *United States v. Almonte-Báez*, 857 F.3d 27, 31 (1st Cir. 2017). Courts assessing probable cause under the automobile exception fix their gaze on what law enforcement knew at the moment of the search. *United States v. Lopez*, 380 F.3d 538, 543 (1st Cir. 2004). "[T]he relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). That inquiry, by design, resists tidy checklists, but it does not license law enforcement to transform a collection of wholly innocent, everyday behaviors into probable cause merely by labeling them suspicious. *See Reid v. Georgia*, 448 U.S. 438, 441 (1980) (per curiam) (facts describing "a very large category of presumably innocent travelers" cannot, without more, support reasonable suspicion, let alone probable cause). Nonetheless, a fact that is, standing alone, "quite consistent with innocent" activity does not automatically become less innocent by being counted alongside others; the question is whether the facts, taken

together, add up to more than a repackaged description of ordinary behavior. *United States v. Sokolow*, 490 U.S. 1, 9 (1989).

As a threshold matter—and one Mr. Presby does not contest—the Deputy's initial stop of Mr. Childs's van was lawful. The Deputy permissibly ran the van's license plate, discovered an outstanding arrest warrant for its registered owner, and thus had objective grounds to stop the vehicle. *See Boroian v. Mueller*, 616 F.3d 60, 67 (1st Cir. 2010) ("[R]unning computerized check of individual's lawfully obtained license plate and driver's license identification numbers in government databases, which revealed information about subject's car ownership, driver status, and criminal record, was not a search under the Fourth Amendment." (quotation modified)); *see also Utah v. Strieff*, 579 U.S. 232, 240 (2016) (officer discovering a valid warrant has an "obligation to arrest" because a "warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provisions" (quotation modified)).

The Government contends the totality of the circumstances armed the Deputy with probable cause to search the van under the automobile exception, pointing to: the driver's slowing to a near stop after seeing the cruiser despite having the right of way; Mr. Childs's question about the reason for the stop; Mr. Childs's claim that that he and Mr. Presby had plans for a post-midnight painting of a nearby business's steps; a marked-over prescription pill bottle in the van that both men claimed held paint activator; the cut pen, powdery substance, and unlabeled and cut pills located on Mr. Childs's person; and Mr. Presby's three-year-old charge for furnishing unlawful drugs. Notably, although the K-9 sniffed the van and failed to alert, the Government insists that the non-alert carries no weight whatsoever in the probable-cause calculus, resting that position on the K-9's lack of training to detect pills.

Viewed individually and in combination, several of the circumstances the Government marshals describe conduct that countless law-abiding people engage in every day: driving cautiously near a marked cruiser, slowing around a sharp and confusing corner late at night, and asking why one has been pulled over. *Reid* cautions against converting large swaths of innocent conduct into probable cause simply because officers arrange it into a narrative of suspicion. *See Reid*, 448 U.S. at 441 ("Although there could, of course, be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot, this is not such a case." (internal citation omitted)).

This is not to say that the Court discounts every factor the Government identifies, however. The cut pen, its untested residue, and the container with cut pills recovered from Mr. Childs's person are of a different character—those items are genuinely suspicious. The difficulty for the Government is not that those items lack significance, but that their significance points to Mr. Childs, not to the van. Probable cause to search a particular place requires a nexus between the suspected criminal activity and that place, *see Almonte-Báez*, 857 F.3d at 31–32, and items found on a person, standing alone, do not automatically establish that the vehicle he occupied also contains contraband or evidence of a crime. Considered together with the innocuous circumstances, these facts feed the Deputy's suspicion of drug-related activity—but suspicion is not probable cause. Probable cause requires more than "bare suspicion," *Brinegar v. United States*, 338 U.S. 160, 175 (1949), it demands a fair probability that evidence of a crime will be found in the place to be searched, *see United States v. Adams*, 971 F.3d 22, 31–32 (1st Cir. 2020). Although the standard is flexible, it still sets a threshold: officers need more than a hunch, however sincere and even when ultimately vindicated, and more than a collection of facts that fail

to converge on the place actually searched. On this record, the totality of the circumstances did not clear that line.

The Deputy testified that his suspicion began when he observed the van slow down after seeing his police cruiser, despite it having the right of way. He also found it abnormal when, immediately after being pulled over, Mr. Childs asked: "Reason for stopping?" The Court does not waive this conduct aside simply because it may have an innocuous explanation, *see Gates*, 462 U.S. at 243 n.13, but the record reflects that the intersection Mr. Childs navigated was genuinely difficult, especially at night—making the van's slowing just as consistent with careful driving as with nerves at the sight of police. That is precisely the kind of ambiguous, everyday conduct *Reid* warns against treating as suspicious by default. *See Reid*, 448 U.S. at 441. Even if Mr. Childs slowed the van in reaction to seeing law enforcement, "[n]ervousness is a common and entirely natural reaction to police presence." *United States v. McKoy*, 428 F.3d 38, 40 (1st Cir. 2005). Indeed, at a confusing intersection, slowing down is simply what a careful driver does to avoid a citation, particularly with a cruiser nearby potentially scrutinizing the operation. Likewise, Mr. Childs's question about the reason for the stop may have drawn the Deputy's attention but also remains equally consistent with lawful behavior. Nor does the late-night errand Mr. Childs described—painting the steps of a nearby business—tip the scale toward suspicion; an implausible alibi may raise an eyebrow, but it is thin soil for probable cause to take root, particularly where, as here, the automobile exception demands probable cause to believe the vehicle itself contains contraband, not merely that its occupants' story fails to add up.

Moreover, while the suspected cut pen, powdery residue therein, and pills the Deputy recovered from Mr. Childs were significant circumstances contributing to the

8

Deputy's suspicion of possible drug-related activity, he found those items on Mr. Childs's person, not inside the van. The Deputy observed no additional indicia connecting the van itself to drug activity, such as the odor of illegal drugs, scales, other drug paraphernalia, admission of unlawful possession, or impaired driving. *Cf. United States v. Partridge*, No. 23-cr-00120, 2024 WL 1859865, at *12 (D. Me. Apr. 29, 2024) (finding probable cause to search a vehicle under the automobile exception in part because law enforcement saw a container "of the type commonly used to store illegal drugs" in the vehicle that "held residue consistent with heroin or fentanyl," as well as because there was paraphernalia "commonly associated with drug activity" in the vehicle). Indeed, the Deputy testified that nothing about the van, including any furtive movements, struck him as out of the ordinary while he followed it before the stop, further severing the paraphernalia found on the operator from the vehicle itself.

The Deputy also knew of the prescription pill bottle in the van, its pharmacy label scrawled over in permanent marker. While the Deputy was not required to accept the "paint-activator" explanation at face value, his body-worn camera shows him telling another officer only that the occupants claimed it held paint activator, was not their prescription, and that he did not know whether it held "piss" or something else. *See* ECF No. 63-2 (Alexander Body Cam). Nothing in the record suggests he actually suspected contraband; he found the bottle "abnormal" simply because he expected paint activator to come in a can. That officers failed to collect the pill bottle as evidence only underscores the thinness of this indicium of drug activity. The same is true of Mr. Presby's 2022 charge for furnishing unlawful drugs, which the Deputy discovered only because he ran Mr. Presby's license to see whether he could lawfully drive the van. That charge fed the Deputy's suspicion, but it drew scant connection between Mr. Presby's criminal history

9

and the van itself. *See, e.g.*, *United States v. Vasey*, 834 F.2d 782, 788 (9th Cir. 1987) (finding insufficient probable cause for vehicle search notwithstanding the defendant's outstanding arrest warrant for a drug charge because there was "little or no evidence indicating that [defendant's] car contained contraband"); *United States v. Lobor*, No. 24-cr-00134, 2025 WL 3551728, at *12 n.15 (D. Me. Dec. 11, 2025) ("The fact that the Defendant had one prior drug-related arrest at an unspecified earlier date does not, by itself, establish probable cause to search his home for illegal drugs, drug paraphernalia, or money. To conclude otherwise would be to hold that any drug-related arrest effectively strips a person of the Fourth Amendment's protections."). Tellingly, before learning of that three-year-old charge, the Deputy was prepared to allow Mr. Presby to drive off in the van so long as he had a valid driver's license.

Finally, the Court also considers the K-9's failure to alert within the totality of the circumstances. The Deputy testified that his K-9 was properly trained, qualified, and certified to detect methamphetamine, crack and powder cocaine, and heroin. While a K-9's failure to alert does not necessarily "destroy the 'probable cause' that would otherwise exist," it does bear on the totality of the circumstances. *United States v. Jodoin*, 672 F.2d 232, 236 (1st Cir. 1982), *abrogated on other grounds by Bloate v. United States*, 559 U.S. 196 (2010); *see United States v. Simpkins*, 978 F.3d 1, 9 (1st Cir. 2020) ("A drug-sniffing dog's failure to alert is not invariably inimical to the existence of probable cause; instead, it is merely one fact to be weighed when assessing the totality of the circumstances."). Here, however, the Government has not met its burden of identifying other facts sufficient to connect the van to drug-related criminal activity. Thus, while the K-9's failure to alert is not dispositive, it further undermines the existence of probable cause.

10

Under the totality of the circumstances, the facts known to law enforcement never established a fair probability that the van contained contraband or evidence of drug activity. At most, they raised a suspicion of drug-related activity—and suspicion alone is not enough. Probable cause to search the van required a specific nexus between the suspected criminal activity and the van, and that nexus was absent. *See, e.g., United States v. Almeida*, No. 11-cr-127, 2012 WL 75751, at *9 (D. Me. Jan. 9, 2012), *report and recommendation adopted*, 2012 WL 948457 (D. Me. Mar. 20, 2012), *aff'd*, 748 F.3d 41 (1st Cir. 2014) (finding no probable cause where law enforcement had "no specific basis to believe that there were drugs" in the vehicle because the "few indicia available" were "erratic driving, the reported drug history of [defendant], the provision of false identities, and the presence in [defendant's] wallet of money bundled in rubber bands").

In sum, law enforcement lacked probable cause to search the van, including Mr. Presby's backpack. Unless another exception to the warrant requirement applies, the evidence must be suppressed.

### B. Search Incident to Arrest

During the hearing, the Government suggested the van search might also be justified as a search incident to Mr. Childs's lawful arrest, remarking that the exception was "somewhat present" in the facts of the case. In the vehicle context, that exception encompasses only "the arrestee's person and the area within his immediate control," meaning "the area from within which he might gain possession of a weapon or destructible evidence." *Arizona v. Gant*, 556 U.S. 332, 339 (2009) (quotation modified). It does not authorize searching a vehicle after the arrestee has been secured and cannot access its interior. *See id*. Instead, this exception applies only where there is reason to

11

believe the vehicle contains "evidence of the offense of arrest" or a reasonable threat to officer safety. *Id*. at 346.

Here, the van search plainly exceeded the area within Mr. Childs's "immediate control." *Id*. at 339 (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). Mr. Childs was the only person arrested, and by the time of the search he was handcuffed and stationed at or near the hood of a police cruiser, with an officer beside him. Mr. Presby had not been arrested, and officers had moved him away from the van before the search began. Nothing suggests officers expected to find evidence of the offenses underlying Mr. Childs's arrest—an outstanding warrant for refusing to submit to arrest or detention and driving to endanger—in the van, or that they faced any reasonable threat to their safety. *See, e.g.*, *United States v. Campbell*, No. 11-cr-00100, 2011 WL 6097998, at \*7 (D. Me. Dec. 6, 2011), *report and recommendation adopted*, 2012 WL 315640 (D. Me. Feb. 1, 2012), *aff'd*, 741 F.3d 251 (1st Cir. 2013) (declining to apply search incident to lawful arrest exception to warrantless vehicle search). Accordingly, the search incident to arrest exception does not save the Government's warrantless search.

Because no exception to the warrant requirement applies, the evidence seized from Mr. Presby's backpack during the warrantless search of the van is inadmissible as fruit of the poisonous tree.

### III.   Conclusion

Based on the foregoing, the Court **GRANTS** Mr. Presby's motion to suppress the physical evidence and **DENIES AS MOOT** his motion to suppress statements, ECF No. 39, and motion to dismiss the indictment, ECF No. 35. All evidence obtained from the warrantless search of the van, including the backpack, is **SUPPRESSED**.

12

**SO ORDERED.**

Dated this 4th day of August, 2026.

<u>/s/ Stacey D. Neumann</u>
**UNITED STATES DISTRICT JUDGE**